IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CESAR TORRES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 25-cv-1616 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| DAVID HICKEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff Cesar Torres's Complaint in its entirety. Mot. to Dismiss, Dkt. No. 26. Torres brings three substantive claims under 42 U.S.C. § 1983 alleging various incidents of police misconduct in connection with his trial for first-degree murder and attempt murder in state court, at the conclusion of which, on August 15, 2018, he was convicted by a jury. Compl. ¶¶ 113–127, Dkt. No. 1. Defendants are the City of Chicago and two Chicago police officers involved in the investigation that led to Torres's arrest and trial, David Hickey and James Decicco.[1] Torres's conviction was reversed on appeal, the appellate court ruling that the trial court erred in permitting Officer Decicco to testify that an anonymous tipster identified Torres as the shooter, as the testimony was hearsay, violated Torres's right to confront his accusers, and was not harmless. *People v. Torres*, 2021 IL App (1st) 182125-U, ¶¶ 47–53. On February 24, 2023, Torres was acquitted of all charges after a bench trial, and on October 25, 2025, he was granted a certificate of innocence. Compl. ¶¶ 11–12. This litigation followed.

The court has struggled mightily to make sense of Torres's complaint and the Response, Dkt. No. 31, he has submitted in opposition to defendants' motion to dismiss. It appears that

---

[1] Defendant Decicco's name is spelled variously throughout Torres's materials. The court adopts the spelling used by the Illinois Appellate Court.

Torres has presented a cut-and-paste job from other cases[2] and from other briefs, alleging factual matter which he never attempts to show is relevant to his claims, contradicting himself on some occasions, relying on authority which no longer is good law, and going so far as to accuse "the district court in this case" of misunderstanding the law, even though this Memorandum Opinion and Order is the first substantive ruling in the instant case. *See* Resp. 6–7, Dkt. No. 31.

The problems are manifold. One is that governing caselaw forecloses many of Torres's claims, but rather than acknowledging that fact, Torres argues that the cases (including governing Seventh Circuit and Supreme Court authority) were wrongly decided and should be ignored by this court. *See* Resp. 6. Another is that Torres's complaint is awash in black letter law from reported cases, but he makes no effort to indicate which of his complaint's 112 paragraphs of facts support each of his legal claims. *See* Resp. 13. Further, Torres makes a number of legal arguments without providing caselaw or a coherent argument that would justify a ruling in his favor, meaning that under governing Seventh Circuit caselaw, he has waived the argument. "[P]erfunctory and undeveloped" arguments are waived, as are arguments barren of citations to pertinent legal authority. *E.g., White v. United States*, 8 F.4th 547, 552–53 (7th Cir. 2021) (citing *United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009)); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

In short, Torres has thrown everything he can think of at the court, apparently hoping that the court will figure out which, if any, of his claims should survive. In an area as legally difficult as this one, the court will not undertake that task on Torres's behalf. *See NASA v. Nelson*, 562 U.S. 134, 147 n.10 (2011). "It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Sullers v. Int'l Union Elevator Constructors*, 141 F.4th 890, 895 (7th Cir. 2025) (quoting *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986)). Hopefully, this memorandum opinion (the legal conclusions of which are now the law of the case) will eliminate some of the chaff from the wheat, and

---

[2] *Compare* Resp. 12, *with* Resp. to Partial Mot. to Dismiss 8, *Anderson v. Jones*, No. 25-cv-01619 (May 3, 2025) Dkt. No. 29.

Torres, if he wishes to do so, will be able to come back with an amended complaint and briefing that are more helpful than what he has so far provided.

## THE COMPLAINT

Torres's complaint consists of 112 paragraphs of facts, recounting a summary of the procedural history of his state court criminal case, evidence relating to the murder of which he was accused and acquitted, the investigation, Torres's first trial, his first appeal, and his second trial, followed by three legal claims (as well as an indemnification claim against the City of Chicago). *See* Compl. 1–13. Count I, encompassing paragraphs 113 through 119, is entitled "Violation of Due Process by Defendant David Hickey by Fabricating Evidence that He Could Identify the Person in the Surveillance Video as 'Baby Ghost,' or Cesar Torres." Paragraph 113 "realleges all previous paragraphs and incorporates them by reference."[3] Paragraph 114 summarizes Count I's title. Paragraph 118 states the legal conclusion that the false information was "a material factor in Cesar Torres's conviction," and paragraph 119 states the legal conclusion that "[t]he false information violated Cesar Torres's right to due process under the fourteenth amendment to the United States Constitution." The three remaining paragraphs state in full:

> 115. Defendant Hickey memorialized this information [the allegedly fabricated information] in police reports and conveyed this false information to Defendant Decicco.
>
> 116. Defendant Hickey also conveyed this false information to the prosecutors who investigated and prosecuted Cesar Torres.
>
> 117. The false information was conveyed to the jury not only through the testimony of Defendant Hickey, but also through the testimony of Defendant Decicco, for which defendant Hickey cannot claim immunity.

Compl. ¶¶ 115–17.

Count II is entitled "Violation of Due Process by Defendant James Decicco by Fabricating Evidence that He Received an Anonymous Tip that Cesar Torres or 'Baby Ghost,'

---

[3] The prior 112 paragraphs are rarely referred to in the legal claims and argument.

was the Shooter." As in Count I, the first paragraph, ¶ 120, "realleges all previous paragraphs and incorporates them by reference," while the next paragraph, ¶ 121, repeats the words of Count II's title. The last two paragraphs, as in Count I, allege the legal conclusions that the fabrication was material and that it violated due process. The one remaining paragraph, ¶ 122, states in full: "Detective Decicco conveyed this false information to the prosecutors and it contributed to the decision to charge Cesar Torres and played a role in his conviction."

Count III is entitled "Violation of Fourteenth Amendment Due Process by Defendant Decicco by Using Coercive and Suggestive Identification Procedures to Induce the Witnesses Chavez and Mundo to Identify Cesar Torres." Consistent with the prior counts, Count III's first paragraph, ¶ 125, "realleges all previous paragraphs and incorporates them by reference," and the third and final paragraph, ¶ 127, states the legal conclusion that "[t]hese suggestive procedures deprived Cesar Torres of a fair trial." Between them is one paragraph, ¶ 126, which states in full

> Defendant Decicco deprived Cesar Torres of due process by: (1) telling the witnesses Chavez and Mundo that the offender, "Baby Ghost," a "Two-Sixer" was in custody, (2) constructing a photo array in which the only person in the photo array wearing a red shirt was Cesar Torres, and (3) constructing a lineup in which Cesar Torres was the only young male Hispanic with short hair and in which the other fillers were either obviously older or had hair in waist length ponytails.

Compl. ¶ 126.

Count IV asserts an indemnification claim under Illinois law against the City of Chicago. Compl. ¶¶ 180–82.

### ANALYSIS

The basic law is quoted by both parties and does not seem to be the subject of disagreement. As set forth by Torres:

> To establish a due process fabrication claim, [Torres] must establish the officer (1) knowingly manufactured evidence, (2) they knew the evidence was false, (3) the evidence was introduced against the plaintiff during their criminal trial, and (4) the evidence was material to their conviction. *Coleman v. City of Peoria*, 925 F.3d 336, 344 (7th Cir. 2019); see also

> *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020); Seventh Circuit Pattern Jury Instructions (Civil) Instruction 7.14 (2017).

Resp. 5; *accord* Mot. to Dismiss 5–6. The parties' disagreement is how this law applies to this case.

In each count are numerous embedded claims. Because so many of these claims are foreclosed by governing Supreme Court or Seventh Circuit law and because so many others are briefed so inadequately as to constitute waiver, the court in this opinion addresses the claims which cannot survive based on the complaint or Torres's briefing.

Counts I and II charge defendants Hickey and Decicco with fabricating evidence: Hickey by claiming to prosecutors and at Torres's first trial that he could identify the person in the surveillance video as "Baby Ghost" or Cesar Torres, and Decicco by claiming to prosecutors and at Torres's first trial that he received an anonymous tip that "Baby Ghost" or Cesar Torres was the shooter. *See* Compl. ¶¶ 48–54, 83–87, 98, 100. In the face of the Supreme Court's decision in *Briscoe v. LaHue*, 460 U.S. 325, 328 (1983), holding that police officer witnesses in criminal trials are absolutely immune from civil damages for their testimony even if knowingly fabricated, Torres asserts that the contention that defendants Hickey and Decicco "are protected by testimonial immunity . . . must be rejected." Resp. 5. Despite this statement, Torres does not actually argue that the officers lack testimonial immunity. What he argues instead is that defendant Hickey's "false information was conveyed to the jury not only through defendant Hickey's own testimony, but also through the testimony of defendant DiCicco [sic], for which Hickey can enjoy no immunity." Resp. 6. Torres provides no citation to support this *ipse dixit*, and the court has no idea how it would be consistent with *Briscoe*. It is beyond controversy that Hickey and Decicco have absolute immunity for *their* false testimony. Torres's argument concerning the introduction of one officer's false statements through another officer's testimony is underdeveloped and waived. *See White, supra*, 8 F.4th at 552–53.

Torres next argues that the court should ignore the district court's decisions in *Walker v. City of Chicago,* 2025 WL 343471, at *3 (N.D. Ill. Jan. 30, 2025) and *Brown v. City of Chicago*,

633 F. Supp. 3d 1122, 1156–57 (N.D. Ill. 2022), which hold that unadmitted police reports cannot be the basis for a due process fabrication claim. Torres asserts that both cases are inapplicable and wrongly decided. Resp. 6. Torres does not attempt to explain why these cases are inapplicable or were wrongly decided. Nor does he contend that the allegedly fabricated police reports in his case were admitted into evidence. Indeed, he acknowledges that it is "extremely unusual that a police report documenting fabricated evidence is itself received as evidence in a criminal case." Resp. 7. His primary argument, if it is indeed an argument, is that "[t]o hold that a document memorializing fabricated evidence must be admitted into evidence for due process to be violated would essentially eliminate fabrication of evidence claims." *Id.*

Unfortunately for Torres, his position has been rejected not only by the district court cases he criticizes but by the Seventh Circuit. Binding Seventh Circuit authority makes clear that in a § 1983 case based on fabrication of evidence, it is Torres's burden to prove that "the evidence was used at his criminal trial." *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020) ("Patrick had the burden to prove that the fabricated evidence was used against him at his criminal trial and was material."); *see also Avery v. City of Milwaukee*, 847 F.3d 433, 440 (7th Cir. 2017). *Walker* and *Brown* are consistent with Seventh Circuit authority making clear that a fabricated police report not used at trial cannot support a due process claim.

Perhaps most extraordinarily (and what has suggested to the court that Torres may be focused more on preserving issues for appeal than on helping this court figure out if he has stated a due process claim) is part II of his Response entitled, "The Panel Decision of the Seventh Circuit in *Blackmon v. Jones,* Contradicts Well-Established United States Supreme Court and Seventh Circuit Precedent and Should Be Rejected by this Court." Resp. 10. This portion of the Response argues that defendant Decicco violated Torres's due process right by using suggestive identification procedures in a lineup and photo array presented to the witnesses Chavez and Mundo. Resp. 11. Recognizing that *Blackmon* dooms his identification evidence claims, Torres argues that *Blackmon*, in relying on the Supreme Court's decision in *Vega v. Tekoh*, 597 U.S. 134 (2022), is "substantially flawed." Resp. 12.

6

Eric Blackmon was convicted of murder in a bench trial in 2004. *Blackmon v. Jones*, 132 F.4th 522, 523 (7th Cir. 2025). He appealed in state court without success. But he ultimately prevailed on a federal habeas claim, and the state declined to retry him. *See id.* at 524. He then brought a § 1983 case against three police officers who had investigated the crime. When the case reached the Seventh Circuit, Blackmon asserted that the lineup and photo array, which led to two witnesses identifying him at trial, were unconstitutionally suggestive because the witnesses had described the shooter as wearing braids, and Blackmon was the only person wearing braids in the lineup and photo array. *Id.* The district court denied the officers' motion for summary judgment based on qualified immunity. The Seventh Circuit reversed, holding, *inter alia,* that the police do not violate the defendant's right to a fair trial when evidence is introduced at trial based on a suggestive identification. *Id.* at 525–26. The Seventh Circuit reasoned that a defendant's rights are violated *not* when witnesses are shown a suggestive lineup or photo array, but rather when the results of a suggestive lineup or photo array are introduced into evidence at trial. *Id.* at 525. Prosecutors and the trial judge, rather than police officers, are responsible for the introduction of evidence at trial. "[S]ince an investigating officer is not responsible for the decisions of the prosecutor and the judge, without which there could not have been a problem under the Due Process Clause, it is hard to see why damages would be appropriate." *Id.*

The Seventh Circuit, as Torres points out, based its reasoning in *Blackmon* on *Vega*, which held that § 1983 cannot be used to obtain civil damages for the use at trial of statements obtained in violation of *Miranda v. Arizona,* 384 U.S. 436 (1966). *Blackmon*, 132 F.4th at 524. *Vega*, the Seventh Circuit explained, announced a result for coerced statements "equally true of eyewitness identifications potentially influenced by suggestive procedures." *Id.* at 525. Torres's reliance on Judge Seeger's pre-*Blackmon* opinion in *Bolden v. Pesavento*, 2024 WL 1243004 (N.D. Ill. March 23, 2024), reaching a conclusion contrary to that reached by the Seventh Circuit in *Blackmon* a year later, cannot be taken seriously.

Torres correctly points out that the Seventh Circuit conceded in *Blackmon* that there might be circumstances that would compel a different result, such as if the police lied to the

prosecutor to mislead the prosecutor about the circumstances of the lineup or photo array. *See Blackmon*, 132 F.4th at 525–26. Torres asserts: "Here, there are unusual circumstances." Resp. 13. Torres's one sentence argument is that defendant Decicco "coached Chavez and Mundo to falsely identify Cesar Torres by telling them that he had the offender, 'Baby Ghost' was [sic] in custody," citing ¶ 58 of the Complaint (the correct paragraph is ¶ 57).[4] *Id.* As is the case with almost every argument Torres makes which is not foreclosed by governing authority, this argument is so inadequately developed as to amount to a waiver. *See White*, 8 F.4th at 552–53.

Could Torres argue persuasively that the facts of this case fit an exception to *Blackmon*? Maybe he could, but he has not. From the examples given by the Seventh Circuit, it appears that what constitutes an "unusual circumstance" is when the police mislead the prosecutor about the circumstances of the lineup or photo array, not as Torres suggests, when the police do something to make the lineup or photo array unusually suggestive.[5]

Given *Blackmon*'s holding that defendant police officers are not liable for the introduction at trial of a suggestive lineup or photo array, the court need not reach the issue of qualified immunity.

## CONCLUSION

For the reasons stated, defendants' motion to dismiss the complaint, Dkt. No. 26, is granted.[6] It may well be that Torres is making his argument for the Court of Appeals, in which case he can call this matter concluded and file a notice of appeal. Alternatively, if he wishes to amend his complaint, he is free to do so within the next 28 days, by and including April 23,

---

[4] Paragraph 58 of the complaint reads, "On February 10, 2014, Decicco showed the photograph to Chavez and Mundo."

[5] The Seventh Circuit suggests that one unusual circumstance might be when the police coach the witnesses to identify the suspect but tell the prosecutor they did not do so. Or when police use a suggestive photo array but furnish the prosecutor with a "bogus" array that is not suggestive. *Blackmon*, 132 F.4th at 525–26.

[6] Count IV's indemnification claim against the City depends on Torres's being able to maintain at least one of his tort claims against the officer defendants. Since the first three counts fail to state a claim, Count IV must be dismissed. *See, e.g.*, *Baskins v. Gilmore*, 2018 WL 4699847, at *12 (N.D. Ill. Sept. 30, 2018) (citation omitted).

2026.  If he does so, he is advised that asking this court to ignore governing Supreme Court or Seventh Circuit authority, without making clear that he is simply attempting to preserve an issue for appeal, comes close to, or constitutes, sanctionable misconduct.

Date: March 26, 2026

/s/ Joan B. Gottschall
United States District Judge